IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **GREENE COUNTY, GEORGIA,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | No. 3:11-CV-58 (CAR) |
| : | |
| **RAYMOND O. BOYD,** : | |
| : | |
| Defendant/Third-Party Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **WALTER SANDERS, in his Official** : | |
| **Capacity and Individually,** : | |
| : | |
| Third-Party Defendant. : | |

**ORDER**

This matter comes before the Court on Plaintiff Greene County, Georgia's ("Greene County or the County") Motion to Remand [Doc. 8]. Greene County contends this Court lacks subject matter jurisdiction over this removed action because it does not present a federal question and requests that the Court remand this matter to state court. Having considered the matter, the Court finds that the County's petition to condemn does not present a federal question that supports federal jurisdiction over this action; thus, the Court lacks subject matter jurisdiction. Accordingly, Plaintiff's Motion to Remand [Doc. 8] is **GRANTED**.

I. BACKGROUND

On February 15, 2011, the Board of Commissioners of Greene County, Georgia, adopted

1

Resolution Number 2011.2.15(b). That resolution authorized Greene County, pursuant to O.C.G.A. § 22-2-100 et seq., to condemn 1.317 acres of land belonging to Defendant Raymond Boyd ("Boyd"). According to the Resolution, the land in question was located adjacent to property currently occupied by existing airport facilities, and the acquisition of the land was a necessary safety measure for proceeding with various airport improvement and expansion projects.

On March 26, 2011, Greene County filed a petition for condemnation against Boyd's property in the Superior Court of Greene County, Georgia. In its petition, Greene County stated that it was acting pursuant to the provisions of O.C.G.A. § 22-2-100 et seq. Greene County described the land in question as being adjacent to the Greene County Airport and located within a Runway Protection Zone ("RPZ") and stated that the Federal Aviation Administration prohibits residences and places of public assembly in RPZ areas. Greene County further stated that it had determined that the lands in question were necessary for assuring safety zones for runways and taxi-ways of the airport as set forth in the "2006 Airport Improvement Project 03-13-0127-02; WSA Project 537680 for Runway and Taxiway Extension, Widening and Overlay; Airport Lighting, Improvement and Associated work as well as [the] 2009 Runway Extension and Partial Parallel Taxiway with Airfield Electrical Improvements identified as GADOT AP090-0911-30 (133) Greene and WSA Project 103212." Greene County averred that acquisition of the land was necessary, and that questions of necessity and public convenience with respect to the listed renovations and acquiring the land had been determined by the Greene County Commission. In order to ensure a quick determination of just and adequate compensation, Greene County requested judicial ascertainment and supervision of any questions and proceedings connected with

the condemnation.

On April 5, 2011, the Superior Court entered an Order appointing a Special Master to hear evidence and file a report as to his findings. On April 12, 2011, Boyd filed a Motion to Vacate Appointment of the Special Master in the Greene County Superior Court asserting various procedural defects in the appointment of the Special Master.

On April 25, 2011, before the Greene County Superior Court ruled on Boyd's Motion to Vacate Appointment of the Special Master, Boyd filed a Notice of Removal and removed the action to this Court. Upon removing the action, Boyd also renewed his Motion to Vacate Appointment of the Special Master in this Court, filing the exact same document that he had filed in Greene County Superior Court [Doc. 2].

On May 10, 2011, Greene County filed the Motion to Remand currently under consideration.

On May 13, 2011, Boyd filed a Third Party Complaint against Walter Sanders. In that complaint, Boyd alleged that Sanders, the secretary of the Greene County Airport Authority and the Greene County Board of Commissioners, had committed various federal and state RICO violations [Doc. 9]. On June 13, 2011, Sanders filed a Motion to Dismiss the Third Party Complaint [Doc. 14].

II. DISCUSSION

A defendant is entitled to remove a civil action filed in state court to federal district court if the action could have been originally filed in federal court. 28 U.S.C. § 1441(a). Federal courts have subject matter jurisdiction in two primary types of cases: cases presenting a federal question, 28 U.S.C. § 1331, and cases between parties of diverse citizenship, 28 U.S.C. § 1332.

Because all the parties to this action are citizens of Georgia, this is not a proper case for diversity jurisdiction. Thus, the question here is whether Greene County's petition for condemnation is a "civil action[] arising under the Constitution, laws, or treaties of the United States." Id. § 1331. If so, then the Court may properly exercise jurisdiction over this case on removal. If not, then the Court must remand the case to state court. Id. § 1447(c). "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008).

"A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc. v. Mcveigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27–28 (1983)). In Georgia, the state may exercise the right of eminent domain "to reassert, either temporarily or permanently, its dominion over any portion of the soil of the state on account of public exigency and for the public good." O.C.G.A. § 22-1-2(a). Boyd concedes that Georgia law creates Greene County's right to institute a condemnation procedure against him using the special master method. See id. § 22-2-100 et seq. Accordingly, this is not a case where federal law creates the cause of action. Instead, Boyd argues that this is a case in which Greene County's right to condemn his property depends on the resolution of a substantial question of federal law, namely FAA regulations concerning RPZs.

In support of his contention, Boyd points to the Supreme Court's decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 125 S. Ct. 2363

4

(2005). In that case, the IRS seized land belonging to Grable to satisfy Grable's federal tax delinquency. Id. at 310, 125 S. Ct. at 2366. The IRS then sold the land to Darue. Id. Several years after the sale, Grable brought a quiet title action in state court, claiming that Darue's title was invalid because the IRS had not notified Grable of the seizure of Grable's property as required by federal statute. Id. at 311, 125 S. Ct. 2366. Darue removed the case to federal court, arguing that it presented a federal question because the claim of title depended on the interpretation of the notice requirement in the federal tax law. Id. Grable challenged the district court's subject matter jurisdiction. After both the district court and the Sixth Circuit Court of Appeals concluded that the case presented a proper federal question, the Supreme Court took the case to consider the issue.

The Court began by surveying its cases that dealt with federal question jurisdiction over state law claims implicating significant federal issues. From those cases, it distilled the common theme that "in such cases . . . federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 313, 125 S. Ct. at 2367. The Court noted, however, that even if a case raised a substantial, contested question of federal law, federal jurisdiction would be appropriate only if such jurisdiction was "consistent with congressional judgment about the sound division of labor between state and federal courts." Id. Because of those sometimes countervailing concerns, the Court had always eschewed a "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." Id. at 314, 125 S. Ct. at 2368. In deciding such issues, the ultimate "question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum

5

may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.@ Id.

Applying that standard, the Court held that federal question jurisdiction was proper in that case. Grable=s sole basis for claiming superior title, and thus its sole basis for prevailing in its quiet title action, was that the IRS had failed to give the notice required by federal tax law. The meaning of that federal statute was disputed by the parties. Thus, the construction of the federal law was not only essential to Grable=s claim, but apparently Athe only legal or factual issue contested in the case.@ Id. at 315, 125 S. Ct. 2368. The Court went on to note that the construction of the federal tax provision was an Aimportant issue of federal law that sensibly belongs in a federal court,@ and that the Government had Aa direct interest in the availability of a federal forum to vindicate its own administrative action.@ Id. The Court also reasoned that exercising federal jurisdiction over the case would not upset the congressionally approved balance of judicial responsibilities because it would be Athe rare state title case that raises a contested matter of federal law.@ Id. Thus, Afederal jurisdiction to resolve genuine disagreement over federal tax title provisions w[ould] portend only a microscopic effect on the federal-state division of labor.@ Id. The Court concluded, AGiven the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.@ Id. at 319B20, 125 S. Ct. 2371.

The Court returned to the substantial federal question doctrine again only a year later in Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 126 S. Ct. 2121 (2006). There, an insurance carrier that administered a health plan for federal employees under the Federal

Employees Health Benefits Act brought a reimbursement action for benefits paid to a plan beneficiary after the beneficiary recovered damages in a state-court tort action against a third party alleged to have caused the beneficiary's injuries. The Court held that the insurance carrier's claim did "not fit within the special and small category" of cases described by Grable. Id. at 699, 126 S. Ct. at 2136. The Court described Grable as a dispute "centered on [whether] the action of a federal agency" was "compatib[le] with a federal statute." Id. at 700, 126 S. Ct. at 2137. The Court described the question in Grable as a "nearly pure issue of law" that was "dispositive of the case and would be controlling in numerous other cases." Id. (internal quotation marks omitted). The Court observed that the claim in Empire Healthchoice was "poles apart from Grable" because it was triggered by "the settlement of a personal-injury action launched in state court," and "not . . . the action of any federal department [or] agency" and because the resolution of the claim was "fact-bound and situation-specific." Id. at 700-01, 126 S. Ct. 2137.

The County's condemnation petition does not "fit within the special and category" of cases described by Grable. Boyd contends that the petition presents a substantial federal question because the County's authority to condemn his property is premised on the proposition that the land is within a Runway Protection Zone (RPZ) and FAA regulations prohibit certain activities in RPZ areas. To the extent that any question regarding FAA regulations is raised by the petition, it is not a substantial federal question under Grable.

The determination of the County's condemnation petition may require some consideration of federal law. In its petition, the County stated that Boyd's land was located in a RPZ and that FAA regulations prohibit certain activities in RPZs. Thus, one reason behind the County's decision to condemn the land would be to comply with those FAA regulations, and the court

7

considering that petition may be called upon to decide whether FAA regulations require the County to condemn Boyd's land.

Nonetheless, that question is markedly different than the question presented in <u>Grable</u>. The interpretation of the notice statute in <u>Grable</u> was the sole disputed issue in the case. 545 U.S. at 315, 125 S. Ct. 2368. That is not the case here. Georgia law requires that private property be condemned for a public use. O.C.G.A. § 22-1-2. Georgia law also grants counties the authority to condemn private property for an airport or landing field or the expansion of an airport or land field, and further provides that lands acquired or owned for airports or landing fields are held for a public use. <u>See</u> O.C.G.A. §§ 6-3-20, 21, 22. In its petition, the County provided numerous other reasons for condemning the land, including that it was "necessary for the purpose of assuring safety zones for runway and taxi-way of the airport as set forth in 2006 Airport Improvement Project 03-13-0127-02; WSA Project 537680 for Runway and Taxiway Extension, Widening and Overlay; Airport Lighting, Improvement and Associated work as well as 2009 Runway Extension and Partial Parallel Taxiway with Airfield Electrical Improvements." Thus, any dispute over whether the County's condemnation of the land was for a public use could likely be resolved without ever taking up the question of whether FAA regulations required the County to take the land. Far from being the sole issue of dispute as in <u>Grable</u>, any question of federal law in this case does not appear to be necessary to the outcome of the case.

Even if the petition necessarily raised a federal issue, other factors still suggest that the question does not meet <u>Grable</u>'s requirements. As the Court noted in <u>Empire Healthchoice</u>, "a crucial factor supporting the result in <u>Grable</u> was the presence of a nearly pure issue of law." <u>Adventure Outdoors</u>, 552 F.3d at 1299. Here, there is no indication that the parties dispute the

meaning or interpretation of any federal statute or regulation. Instead, this case appears to present a "fact-bound and situation-specific" application of federal law. Empire Healthchoice, 547 U.S. at 701, 126 S. Ct. at 2137. While, "[t]he meaning of a federal tax provision" may be "an important issue of federal law that sensibly belongs in a federal court," Grable, 545 U.S. at 315, 125 S. Ct. at 2363, the same cannot be said of the possibility of applying a seemingly commonplace FAA regulation to the particulars of a mine run condemnation. Certainly it is not the case "that only pure legal issues can trigger substantial federal question jurisdiction." Adventure Outdoors, 552 F.3d at 1299. Nonetheless, "resolution of pure issues of federal law provides the strongest basis" for invoking federal jurisdiction. Id. By all accounts, this case does not present such a question.

The County's petition simply does not present a substantial federal question that justifies federal jurisdiction in this case. Any federal question presented by the County's petition may not even necessarily have to be decided to resolve the petition. And if it must, the issue is one of fact-bound application of a federal regulation to this specific situation, not the legal determination of the meaning of a statute. "[R]esort to the experience, solicitude, and hope for uniformity that a federal forum offers on federal issues," Grable, 545 U.S. at 312, 125 S. Ct. 2367, is not required here.

Before concluding on this point, the Court notes that the only other court that has addressed the question presented by this case reached the same outcome. In City of New Orleans v. Portion of Square 205, 866 F. Supp. 969 (E.D. La. 1994), the New Orleans Aviation Board brought an expropriation action in federal court to acquire property located in the New Orleans International Airport's RPZ. In that case, the City argued that its sole public purpose for

expropriating the land was defined by federal aviation laws and regulations; thus, the resolution of those federal questions was a necessary element of its claim. Id. at 971–72. The court disagreed. It found that while the regulations related to the RPZ "may be the impetus for the expropriation," the City's "claim for expropriation does not necessarily depend on the resolution of any federal law." Id. at 972. The court looked to Louisiana law, noting that the City was exercising its power of eminent domain under state law, and that Louisiana law authorized cities to acquire land for public purposes and defined several public purposes related to airport zoning. Id. at 972–73. In light of those statutory provisions, the court found that although "reference to FAA regulations to establish a public purpose may be helpful to [the City's] claim for expropriation, [the City's] right to expropriate does not necessarily depend on any federal law or regulation." Id. at 973. As a result, the City's complaint did "not advance a plausible claim that arises under federal law." Id. at 974.

In addition to his substantial federal question argument, Boyd also argues that federal jurisdiction is proper because the County is bound to follow procedures set forth in federal statutes and regulations when condemning his land and because the County's reason for acquiring his property is preempted by federal law. Whatever the merits of those arguments might be, neither supports federal jurisdiction in this case. The County may well be bound to follow certain federal procedures in condemning Boyd's land for airport purposes, but the statutes and regulations setting forth those procedures do not create the cause of action for this condemnation, and resolution of any questions concerning them is not necessary to determine the County's right under state law to condemn Boyd's land. Instead, failure to follow any procedures required by federal law would be in the nature of a defense, and a federal defense is generally not sufficient to

create federal question jurisdiction. Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1178 (11th Cir. 2006) ("In determining whether federal jurisdiction exists, we apply the well-pleaded complaint rule, which requires that we look to the face of the complaint rather than to defenses, for the existence of a federal question.").

Boyd's preemption argument suffers from the same flaw. Boyd appears to argue that any state law concerning airport safety is preempted by federal law. To the extent that preemption argument has any merit or application to this case, it is also only a federal defense. Generally, a preemption argument — that any state law has been substantively displaced by federal law — is a defense, and as a defense, it is not a proper basis for federal jurisdiction. Geddes v. American Airlines, Inc., 321 F.3d 1349, 1352–53 (11th Cir. 2003). There is a narrow exception to that rule for cases of "complete preemption." "Complete preemption exists when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." Atwater v. National Football League Players Ass'n, 626 F.3d 1170, 1176 n.7 (11th Cir. 2010). Because complete preemption transforms a state law claim into a purely federal claim, it provides a proper basis for federal jurisdiction. Stern v. Int'l Bus. Machs. Corp., 326 F.3d 1367, 1371 (11th Cir. 2003). The reach of the doctrine, however, is very narrow. "The Supreme Court has applied the complete preemption doctrine to only three federal statutes: § 301 of the LMRA [Labor Management Relations Act], the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, and §§ 85 and 86 of the National Bank Act." Atwater, 626 F.3d at 1176 n.7. Boyd has not invoked any of these statutes, nor has he shown how any federal statute on which his preemption claim might depend has the "extraordinary preemption force" of those three statutes. Id. (internal quotation marks omitted).

11

## III. CONCLUSION

The County's condemnation petition does not present a substantial federal question that justifies federal jurisdiction under Grable. Likewise, Boyd's arguments based on federal defenses do not justify federal jurisdiction in this case. Accordingly, the County's Motion to Remand [Doc. 8] is **GRANTED**. This case is **REMANDED** to the Superior Court of Greene County. The Court expresses no opinion on the merits of Boyd's Motion to Vacate Appointment of the Special Master [Doc. 2] or Third-Party Defendant Sanders' Motion to Dismiss Third Party Complaint [Doc. 14]. Those matters are for the Superior Court to consider on remand.

In its Motion to Remand, the County also requested that the Court award costs and expenses incurred as a result of removal pursuant to 28 U.S.C. § 1447(c). Section 1447(c) grants district courts the authority to impose costs and expenses on the removing party after remand. The decision, however, is a matter of discretion. Martin v. Franklin Capital Corp., 546 U.S. 132, 136, 126 S. Ct. 704, 709 (2005). There is no presumption in favor of awarding fees upon remand to state court. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141, 126 S. Ct. at 711. Although Boyd's substantial-federal-question argument was tenuous, the Court cannot say it was objectively unreasonable. The Eleventh Circuit has never addressed the precise issue, and the New Orleans decision was rendered eleven years before Grable by a district court in another circuit. Whether a complaint based on state law contains a substantial federal question is often a difficult inquiry, not subject to precise line drawing. Boyd's argument, although unsuccessful, was not so lacking in merit as to be objectively unreasonable.

Accordingly, the Court will not award costs and fees.

SO ORDERED this 12th day of August, 2011.

<u>S/   C. Ashley Royal</u>
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

bcw